# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

**UNITED STATES OF AMERICA**     *     **CRIM. ACTION NO. 02-30015**

**VERSUS**     *     **JUDGE JAMES**

**CHARLES EDWARD GILES**     *     **MAGISTRATE JUDGE HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Document No. 65) filed on behalf of defendant, Charles Edward Giles ("Giles"). The Government opposes Giles's motion. (Document No. 69). For reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

Giles was charged in a four-count indictment with the following violations of 21 U.S.C. § 841(a)(1): distribution of marijuana; distribution of over five grams of cocaine base; and possession with intent to distribute over fifty grams of cocaine base. Count 4 of the indictment charged Giles with three prior convictions for felony narcotics offenses; however, that count was dismissed after sentencing. After a two day trial, a jury found Giles guilty on counts 1, 2, and 3. Following the pre-sentence investigation and report, and in accordance with the United States Sentencing Guidelines, the trial judge sentenced Giles to life in prison. On appeal, Giles argued that his sentence was improper because the judge failed to comply with the colloquy requirement of 21 U.S.C. § 851(b) and that he had received ineffective assistance of counsel. The United States Court of Appeals for the Fifth Circuit rejected Giles's claim regarding the trial judge's non-compliance with § 851(b), finding that the government had filed an information regarding the

defendant's prior convictions and that the pre-sentence report also listed the prior convictions such that Giles necessarily was aware of the mandatory sentence enhancement because of his prior convictions. In addition, he did not present any evidence on appeal that he could or would have raised a proper challenge to the prior convictions even if the formal requirements of §851(b) had been required. Thus, any such failure did not prejudice the defendant and that basis for the appeal was without merit. The Fifth Circuit also found that the undeveloped record did not allow it to evaluate Giles's ineffective assistance of counsel claim. *See United States v. Giles*, 101 Fed. Appx. 429 (5th Cir. 2004).

The evidence against Giles was voluminous and overwhelming. The charges against him stemmed from two transactions during which he sold marijuana and cocaine to a confidential informant ("CI"), who was either monitored or accompanied by an agent from the Drug Enforcement Agency ("DEA"). After the second sale of drugs, Giles was arrested and taken into custody, and a subsequent search of his vehicle revealed large amounts of cash and drugs. Shortly after being advised of his rights, Giles confessed that he had sold marijuana and cocaine to the CI and undercover DEA agent. In addition, the DEA had made several surveillance tapes of the CI's conversations and dealings with Giles.

At trial, defense counsel made several factual concessions and attempted to show that Giles knew the person he was selling drugs to was a CI and that he only made the sales because he thought he was assisting the police. As an example, counsel stated during opening argument:

> For the most part, ladies and gentlemen of the jury, I agree with what the prosecution is saying. Mr. Giles does not deny delivering crack cocaine to Mr. France [the CI]. He does not deny delivering marijuana to Mr. Kenny France. We have to ask ourselves though, "Why would he do it and not deny it?" That's a question I'm going to leave to you folks. Dope dealers do not sell to uniformed police officers. Ladies and gentleman, remember that.
> . . .
> My client was well aware of Mr. France's comings and goings, knew who

2

he hung out with. You'll also learn that one of the undercover state troopers was familiar to my client. All this is leading up to why? Why would my client do it? I'll hold that in abeyance until we reach the end of trial

Tr. 65-67. Counsel adopted the same strategy in his closing argument when he stated:

> Your honor, yesterday I asked y'all to remember the prosecution's theory of this case, drug dealers don't sell to uniformed police or known policemen. Okay, let's take that to be true, absolutely. I agree with you. Thus my client can't be a drug dealer. Because he knew [the CI] was working with the government, undisputed testimony from that stand . . .

Tr. 189.

Giles's witnesses' testimony was consistent with counsel's theory that Giles did not possess the requisite intent under the law. Giles's cousin, Curtis Giles ("Curtis"), testified that the CI was present at a Super Bowl party in 2001 during which he and Giles overheard the CI mention that he had been arrested for drugs and was now assisting police as an informant. Tr. 158-161. Giles's wife, Martha Giles ("Martha"), also testified that Giles and the CI had spoken several times and that Giles had stated that he was selling drugs because it would help his niece, Shirley, and the police. Tr. 164. Martha and Curtis were the only two defense witnesses.

Prior to Giles's trial, the Government made the following plea offer via letter:

> [T]he defendant agrees to cooperate with law enforcement, including testifying at a grand jury or trial if necessary. In return, he pleads to Count 3 of the Indictment, and the Government will dismiss Counts 1 and 2, and Count 4, the sentencing enhancement count. Count 3 carries a mandatory 10 to Life sentence.

Govt. Exh. A. Defense counsel testified at the hearing on Giles's § 2255 motion that he relayed the Government's offer to Giles, as well as the fact that he was facing a mandatory life sentence if Giles rejected the offer, went to trial, and was found guilty. Hearing Tr. 4-8. Defense counsel stated that the Government's offer presented an indeterminate sentence which Giles was not willing to accept. He also noted that because of the defendant's age and ill health, even a ten year

3

sentence was akin to a life sentence and was unacceptable to the defendant. In addition, although the Government's written offer did not specify the type of cooperation desired, counsel testified that he learned from the prosecution and two DEA agents that they wished to have Giles aid them in investigating Giles' son, who lived in Atlanta. Hearing Tr. 27-28 Giles stated that he had learned of the desired cooperation beforehand from DEA agents on the night of his arrest. Hearing Tr. 47. Giles stated that he was aware of the terms of the Government's plea offer based on his discussions with DEA agents. Hearing Tr. 46-48, 51.

Giles' trial counsel testified that the U.S. Attorney made the same offer to the defendant at the close of trial, and that he went back to Giles with the offer, but that the offer still was not acceptable to Giles because of the cooperation requirement involving Giles' son. Hearing Tr. 6-7.

Defense counsel testified that Giles was not willing to assist in any investigation of his son, even in return for a lighter sentence. While Giles testified that he would have pled guilty if he had understood the mandatory nature of his sentence, he did not testify that he would have been willing to testify against his son.

Giles denied that his attorney told him about the plea offer, but then admitted that he did discuss the offer with his lawyer. He claimed that his attorney never met with him or planned a defense, but later admitted that his attorney learned about the witnesses called on his behalf at trial from him. On the whole, Giles' self-serving testimony lacked credibility. It is very telling that Giles refused to accept the plea offer even after the evidence had been presented at trial. By that time, he certainly was aware of the strength of the government's case against him and the mandatory life sentence he faced if convicted.

# LAW AND ANALYSIS

<u>Ineffective Assistance of Counsel</u>

Under *Strickland v. Washington*, to prevail on an ineffective assistance of counsel claim, a defendant must satisfy a two-part test. 466 U.S. 668, 700 (1984). First, a defendant must show some deficiency in counsel's representation; that "'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Andrew v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994) (quoting *Strickland*, 466 at 688). In this context, a strong presumption exists that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689. Second, and on top of demonstrating a deficiency, prejudice is required. A defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When reviewing a defendant's claim for ineffective assistance of counsel, a court need not discuss the parts of the test in any particular order or even address both components of the test if the defendant makes an insufficient showing on one. *See Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1998).[1]

---

[1] The undersigned notes that the defendant has not framed his claim under the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984), a case creating a very limited exception to having to demonstrate prejudice in claims for ineffective assistance of counsel. A court may dispense with a showing of prejudice only when the proven deficiencies "are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified." *Id.* at 658. One such example is when defense counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659 (emphasis in original). As the Supreme Court stated, this does not include situations where counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others. *Bell v. Cone*, 535 U.S. 685, 696-99 (2002). Instead, those situations qualify as tactical decisions and, if deficient, require a showing of prejudice. *Id.* While Giles argues that counsel made various concessions at trial, the record demonstrates that counsel did not concede Giles's intent to distribute, a key element of the charged offenses. Therefore, this case is not one envisioned in *Cronic*, and Giles must show that any deficiency prejudiced him.

Counsel's Chosen Trial Strategy and Defense Theory

Giles argues that his counsel's chosen defense - one akin to entrapment and based on Giles's knowledge that he was dealing with a confidential informant and his belief that he was assisting police - constitutes ineffective assistance of counsel. Specifically, Giles claims that the overwhelming evidence of his guilt rendered an entrapment defense futile, because it was impossible to prove (1) government inducement of the crime and (2) a lack of predisposition.[2] In pointing to several instances during opening and closing argument when counsel conceded that Giles delivered drugs to the confidential informant, Giles claims that counsel "specifically laid out the government's case and conceded Giles' guilt without giving the jury a basis for considering that guilt to be questionable, rendering his performance deficient." Def.'s Br., p. 8-9.

The record shows that Giles' counsel did not rely on a formal entrapment defense, but instead adopted what could perhaps best be described as a quasi-entrapment defense. Specifically, because of the defendant's confession, counsel conceded Giles's delivery of drugs but presented evidence that Giles knew that he was delivering the drugs to an informant and that he believed he was assisting the informant in assisting the police, all in an effort to show that Giles did not possess the requisite intent to distribute.

The case against Giles consisted of a confession, surveillance tapes, cash marked by the DEA and found in Giles's possession, drugs, and testimony from a CI and DEA agents who had witnessed the transactions. As defense counsel stated, his focus on Giles's intent, knowledge,

---

[2] Giles also argues that counsel was ineffective because he lacked criminal trial experience in federal court. The record reveals that Giles's counsel had significant criminal trial experience in state court, including numerous drug cases, and had also assisted on some federal drug cases. Hearing Tr. 2-3. Regardless, lack of federal trial experience does not preclude an attorney from rendering effective assistance. *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

6

and cooperation was "an interweaving of an attempt to come up with something that was reasonable doubt." Hearing Tr. 34. Given the strong presumption under *Strickland,* the undersigned finds that the defense strategy fell within the broad range of competent representation.

More importantly, even if counsel's trial strategy was deficient, there is no evidence that a different defense would have obtained a better result at trial. It is undisputed that the evidence against Giles was overwhelming, and there is no evidence that any other defense would have produced a different result.

Counsel's Failure to Object to District Court Judge's Noncompliance with § 851(b)

Section 851(b) of Title 21 of the United States Code provides in full:

> If the United States Attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

In noting that the trial judge failed to inquire and inform as required above, Giles claims that his counsel's failure to object at sentencing constitutes ineffective assistance of counsel. As support for his argument, Giles cites two cases in which the Fifth Circuit vacated the defendants' sentences because of the district court's failure to comply with §851(b). Assuming therefore that Giles' counsel's failure to object constitutes a deficiency, Giles has failed to demonstrate any prejudice. Giles has not provided the Court with any grounds for challenging his prior convictions, either now or at his trial. Nothing has changed since Giles appealed his sentence to the Fifth Circuit: Giles "does not argue that he would or could have raised a proper challenge to his prior convictions had he received the district court's warning under section 851(b)," or, in this

7

case, if counsel had objected. *United States v. Giles*, 101 Fed. Appx. 429, 430 (5th Cir. 2004).

Giles' counsel testified at the hearing that he obtained certified copies of the judgments from the prior convictions, that he examined them, and that he could find no basis to attack them. Giles has not raised any such basis in these proceedings. Thus, since the failure to raise a meritless objection cannot constitute a deficiency, counsel's failure to object to the trial judge's non-compliance with § 851(b) does not constitute ineffective assistance of counsel.

Counsel's Failure to Challenge the Indictment

Giles also argues that he received ineffective assistance of counsel based on counsel's failure to challenge Count 4 of the indictment that listed three prior drug convictions. Giles claims that Count 4 failed to mention the mandatory effects his prior convictions would have had on a possible sentence and therefore left him "uninformed as to what specific penalty applied to his case and . . . was denied the opportunity to prepare an adequate argument against the imposition of § 841(b)." Def.'s Br., p.20. In addition to not being apprised of the effects of his prior convictions, Giles also claims that the omissions in Count 4 impacted his ability to make a reasoned decision about whether to plead guilty or proceed to trial.

As with Giles's two other alleged instances of ineffective assistance, there is no evidence that he was prejudiced by counsel's failure to challenge the indictment. First, the record shows that Giles was detained pending trial because he was facing a mandatory life sentence. Second, his attorney informed him that he was facing a mandatory life sentence if he was convicted. Third, any confusion that the omissions in Count 4 created were clarified when, prior to trial, the government filed a notice pursuant to 21 U.S.C. § 851 providing that Giles had three prior convictions that could be used to enhance any potential sentence. Thus, Giles certainly was aware of the peril he faced, and his post-conviction claims to the contrary are disingenuous.

Finally, as the Fifth Circuit noted, the presentence investigation report also identified Giles's prior convictions, and Count 4 was therefore irrelevant to Giles' eventual sentence. In fact, the record also shows that the government agreed to dismiss Count 4 before sentencing, although, because of an oversight, the dismissal did not occur until after sentencing.

Next, Giles testified at the hearing on this motion that he believed that he would be sentenced to ten years, not ten years to life, under the plea agreement. Thus, to the extent that Giles argues that the alleged deficiency impacted his plea decision, the record reveals that he was unwilling to accept even the minimum possible term of incarceration. Although the indictment failed to elaborate on how Count 4 could enhance Giles's sentence, it is clear that Giles sought to avoid any substantial prison sentence and instead preferred to go to trial. In sum, the dismissal of Count 4 prior to sentencing and its irrelevance to Giles's plea decision demonstrates that no prejudice resulted from counsel's failure to challenge the indictment.

## CONCLUSION

For the reasons stated above, it is recommended that defendant's Motion to Vacate be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of December, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE